**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAWANDA D. SMALL, Individually, and on Behalf of the Class; Class Representative,

*Plaintiff-Appellee*,

v.

ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, a Minnesota Corporation,

*Defendant-Appellant*.

No. 23-55821

D.C. No. 2:20-cv-01944-TJH-KES

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Jr., District Judge, Presiding

Argued and Submitted October 21, 2024
Pasadena, California

Filed December 10, 2024

Before: Richard C. Tallman, Ryan D. Nelson, and Daniel A. Bress, Circuit Judges.

Opinion by Judge Tallman

# SUMMARY[*]

## Class Certification / California Insurance Law

The panel reversed the district court's order certifying a class challenging loss of life insurance for failure to pay premiums where insurer Allianz Life Insurance failed to strictly comply with statutorily mandated notice provisions, vacated the district court's summary judgment orders, and remanded.

Lawanda Small, a beneficiary and an additional insured of her deceased husband's Allianz life insurance policy, purported to represent two subclasses: (1) the "Living Insured Subclass" seeking equitable relief to reinstate life insurance coverage; and (2) the "Beneficiary Subclass" seeking damages from death benefits where the insured was now deceased. She alleged that Allianz violated California Insurance Code sections 10113.71 and 10113.72 ("Statutes"), which require that insurers abide by a series of notice procedures to prevent policies from inadvertently lapsing due to an insured's nonpayment of premiums.

The panel first addressed what a plaintiff must show to recover for alleged violations of the Statutes under California law, and held that the California Supreme Court would adopt a "causation" theory—a plaintiff must show an insurer's violation and that the violation caused plaintiff harm.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Applying the causation theory, the panel held that the district court erred in certifying Small's subclasses under Federal Rule of Civil Procedure 23. Under Rule 23(a), Small was not an adequate representative with typical questions to represent both subclasses. In addition, neither subclass satisfied Rule 23(b). With respect to the beneficiary subclass, the predominance requirement—the requirement that the common question predominates over individualized questions—was not satisfied. The living insured subclass did not meet the standard for class-wide equitable relief.

---

### COUNSEL

Benjamin I. Siminou (argued) and Jonna D. Lothyan, Singleton Schreiber LLP, San Diego, California; Sarah Ball and Jack B. Winters, Jr., Winters & Associates, La Mesa, California; Craig Nicholas and Alex Tomasevic, Nicholas & Tomasevic LLP, San Diego, California; for Plaintiff-Appellee.

Aaron D. Van Oort (argued), Faegre Drinker Biddle & Reath LLP, Minneapolis, Minnesota; Stephen J. Jorden, Faegre Drinker Biddle & Reath LLP, Washington, D.C.; Mark D. Taticchi, Faegre Drinker Biddle & Reath LLP, Philadelphia, Pennsylvania; for Defendant-Appellant.

Thomas A. Evans, Alston & Bird LLP, San Francisco, California, for Amici Curiae American Council of Life Insurers and the Association of California Life and Health Insurance Companies.

Deborah L. Stein, Bradley J. Hamburger, Jonathan N. Soleimani, and Timothy D. Biche, Gibson Dunn & Crutcher LLP, Los Angeles, California, for Amicus Curiae John Hancock Life Insurance Company (USA).

Brian J. Malloy, Brandi Law Firm, San Francisco, California; David M. Arbogast, Arbogast Law, San Carlos, California; for Amicus Curiae California Advocates for Nursing Home Reform.

**OPINION**

TALLMAN, Circuit Judge:

We are asked to decide whether the district court below erred in certifying a class challenging loss of life insurance for failure to pay premiums where the Insurer failed to strictly comply with statutorily mandated notice provisions. The answer lies in determining whether a plaintiff alleging a violation of California Insurance Code sections 10113.71 and 10113.72 ("Statutes") need only show the insurance company violated the notice requirement(s), or, whether the plaintiff must also show that the violation caused them harm. We believe it to be the latter and reverse the class certification order.

Defendant-Appellant Allianz Life Insurance ("Allianz") challenges the district court's certification of a class brought by universal and term life insurance policyholders and beneficiaries alleging breach of contract by Allianz. Plaintiff-Appellee LaWanda Small is a beneficiary purporting to represent the two subclasses: (1) the "Living Insured Subclass" seeking equitable relief to reinstate

coverage and for whom the district court awarded a declaration stating the policies "were improperly lapsed by Allianz because it failed to strictly comply with the Statutes before it lapsed those policies"; and (2) the "Beneficiary Subclass" seeking damages from death benefits where the Insured is now deceased. Small alleges that Allianz violated the Statutes, which require that Insurers abide by a series of notice procedures to prevent policies from inadvertently lapsing due to an Insured's nonpayment of premiums.

Allianz argues the district court erred in certifying the class under Federal Rule of Civil Procedure 23 because both Subclasses fail to meet the commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and appropriateness-of-relief provisions of Rule 23(b). Small responds that the district court correctly found all requirements are satisfied.

Allianz separately argues the class should be decertified because the district court issued summary judgment orders before opt-out notices were sent to the Beneficiary Subclass. Allianz argues this violated the one-way intervention prohibition. For the reasons discussed below, we reverse the district court's order certifying the class and vacate the orders on summary judgment, which renders the one-way intervention prohibition issue moot.

# I

## A

In 2012, the California Legislature enacted Insurance Code sections 10113.71 and 10113.72 to prevent "people who hold life insurance policies from inadvertently losing them" due to non-payment of premiums. *McHugh v. Protective Life Ins. Co.*, 494 P.3d 24, 45 (Cal. 2021)

(*McHugh II*); *see* Cal. Ins. Code §§ 10113.71–.72.   The Statutes took effect January 1, 2013, providing three primary procedural safeguards against unintentional lapse.  First, all life insurance policies must "contain a provision for a grace period of not less than 60 days from the premium due date." § 10113.71(a).   Second, "[a] notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed . . . at least 30 days prior to the effective date of termination if termination is for nonpayment of premium."  § 10113.71(b)(1).  Third, all Insureds must "be[] given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium," including "annual[] [notice] of the right to change the written designation or designate one or more persons."  § 10113.72(a)–(b).

The Statutes do not explain whether these procedures apply retroactively to policies already in place, or whether they only apply to policies created after the Statutes went into effect.  Many insurance companies adopted the latter interpretation and consequently did not fully comply with these notice requirements for policies issued before 2013. Their interpretation was based in part on guidance from the California Department of Insurance confirming as much, and the subsequent 2019 California Court of Appeal ruling in *McHugh v. Protective Life Ins.*, 40 Cal. App. 5th 1166, 1177 (2019) (*McHugh I*), holding the same.

Then, in 2021, the California Supreme Court held that the Statutes "apply to all life insurance policies in force when [the Statutes] went into effect, regardless of when the policies were originally issued."  *McHugh II*, 494 P.3d at 27. This means that the language of the Statutes is engrafted into all policies in force as of 2013 as terms of the contract. *See id.* at 45.  Since *McHugh II*, policyholders and beneficiaries

("Insureds") have filed an onslaught of suits based on insurance companies' ("Insurers") non-compliance with the Statutes. These Insureds generally allege breach of contract and related claims against Insurers based on their failure to comply with one or more of the notice requirements in the Statutes. As a remedy, Insureds typically seek equitable relief in the form of reinstatement of the policy if the policyholder is still alive, or damages in the amount of the death benefit if the policyholder is deceased.

## B

Plaintiff LaWanda Small is a Beneficiary and additional Insured of her deceased husband's $75,000 universal life insurance policy purchased in 1990 from Allianz's predecessor, LifeUSA Insurance Company. The Smalls paid the premiums due under the policy for 26 years until they missed a payment in August 2016 and the policy was thereafter terminated. In November 2018, Small, on behalf of herself as an additional Insured, applied for reinstatement of the policy and was denied. In December 2018, Small's husband died. Then, in January 2019, Small filed a death claim for the policy's death benefit. Allianz denied the claim because coverage had lapsed due to nonpayment of premiums.

It is undisputed that Allianz did not notify Small, or her late husband, of the right to designate a third party to receive notices of unpaid premiums or impending termination, as the Statutes require. In fact, Allianz originally took the position (before the California Supreme Court decided *McHugh II*) that the Statutes did not apply to policies like Small's that were issued before 2013.

Then, in 2020, Small sued Allianz in the Central District of California for declaratory relief, breach of contract, and

violations of California's Unfair Competition Law ("UCL") alleging that Allianz failed to comply with the Statutes' notice requirements. Small moved to certify a class of approximately 1,800 members consisting of "owners or beneficiaries of life insurance policies issued before 2013 whose policies were terminated for nonpayment of premiums without receiving an opportunity to designate one or more persons to receive notices of unpaid premiums." The class sought payment of any death benefits due under the policies, and a judicial declaration that the policies were wrongfully terminated and thus continue in full force despite non-payment. Allianz opposed certification, arguing the class did not satisfy the required provisions of Federal Rule of Civil Procedure 23(a) or 23(b).

On May 23, 2023, the district court granted class certification and *sua sponte* divided the class into two subclasses. The first is defined as "owners of policies with currently living Insureds" seeking "to have their policies reinstated" ("Living Insured Subclass"). The second is defined as "beneficiaries of policies with deceased Insureds," seeking "breach of contract money damages in the amount of the death benefit" ("Beneficiary Subclass"). The court found both Subclasses satisfied the numerosity, commonality, adequacy, and typicality requirements of Rule 23(a). The court certified the Living Insured Subclass seeking equitable relief under Rule 23(b)(2), finding it satisfied the appropriateness-of-relief requirement. And it certified the Beneficiary Subclass under Rule 23(b)(3), finding it satisfied the predominance and superiority requirements.

The case schedule provided that the parties submit dispositive motions by June 15, 2023. Both parties filed motions for summary judgment by the deadline. But due to

delays in the proceedings, the opt-out period for potential class members had not yet ended and notices had not yet been sent out when both parties moved for summary judgment. Allianz raised the timing issue with the court on one-way intervention grounds in an objection to Small's motion for summary judgment. Small raised the same objection in its opposition to Allianz's motion for summary judgment. The district court denied the parties' requests to extend the scheduling deadline and kept the dispositive motion deadline as previously set. In their replies, both parties requested that the court defer ruling on the merits of the summary judgment motions until after opt-out notices had been sent.

Despite those requests, the district court issued its summary judgment rulings before class opt-out notices had been sent to potential Beneficiary Subclass members. The court granted summary judgment for Small and the class on their breach of contract and declaratory relief claims. The court ruled that Small and the Beneficiary Subclass "are entitled to money damages . . . for their breach of contract claims," and "are not entitled to equitable relief." The court also ruled that Small and the Living Insured Subclass "are entitled to a declaration that their life insurance policies were improperly lapsed by Allianz because it failed to strictly comply with the Statutes before it lapsed those policies." The court granted summary judgment for Allianz on statute of limitations grounds, holding that class members whose policies were terminated before February 27, 2016, were time barred. The court also granted summary judgment to Allianz on Plaintiffs' UCL claims.

Allianz now appeals the district court's order certifying the class. We granted Allianz permission to appeal under Rule 23(f). In its appeal, Allianz alternatively challenges

class certification on the ground that the district court's summary judgment orders issued during the opt-out period for the Beneficiary Subclass violated the one-way intervention prohibition, arguing the proper remedy is class decertification.

We reverse the district court's grant of class certification and vacate the orders on summary judgment. On remand, the district court should reconsider the summary judgment orders in light of this decision. We do not decide whether those orders violated the one-way intervention prohibition, which is now moot.

## II

The district court had jurisdiction to hear this case under 28 U.S.C. § 1332(d)(2) because the parties are diverse and the requested relief exceeds $5,000,000. We have appellate jurisdiction to hear this interlocutory appeal of a grant of class certification under 28 U.S.C. § 1292(e) as permitted by Federal Rule of Civil Procedure 23(f).

## III

We "review the decision to certify a class and any particular underlying Rule 23 determination involving a discretionary determination for an abuse of discretion." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc) (internal quotation marks and citation omitted). "[T]he district court abuses its discretion if it applie[s] an incorrect legal rule or if its application of the correct legal rule [i]s based on a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir.

2024) (alteration in original) (internal quotation marks and citation omitted).   While we "review the district court's decision granting class certification with more deference than [we] would a denial of class certification," *id.* (citation omitted), "the district court never has discretion to get the law wrong," *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022) (citation omitted).

## IV

To determine whether the class can be certified under federal law we must first determine what Plaintiffs must show to recover for alleged violations of the Statutes under California law. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action."); *see also B.K. v. Snyder*, 922 F.3d 957, 968 (9th Cir. 2019); *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014).

Critically, the Statutes do not authorize a private right of action and the California Insurance Code classifies an insurance policy as a contract. *See* Cal. Ins. Code §§ 380, 10113.71–.72; *McHugh II*, 494 P.3d at 29.  Thus, the cause of action is breach of contract.  And for breach of contract, there must be damages *caused by* the breach. *See, e.g.*, *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1352–53 (2009).  On the face of the legal claim that the Plaintiffs here are asserting, then, it would seem clear that Plaintiffs must show that the breach (in the form of a statutory violation) caused them to lose their policy coverage.

But in the district courts, this issue has led to disagreement.  The key issue is whether, to make out a claim, a plaintiff need only show the Statutes were violated, or,

whether a plaintiff must also show that the violation caused them harm.  The theory of recovery is crucial.  As the record here makes clear, and as other cases confirm, it is a life insurance industry norm that policyholders intentionally cancel their policies (or intentionally allow the policies to lapse) before the Insured dies and the death benefit is payable.  This is because, for term life insurance, premiums rise dramatically as the Insured ages, and so many Insureds decide they no longer want or can afford the cost of continuing the policy.   For universal life insurance, policyholders often terminate early to use their policy's loan feature to fund expenditures, which is a method of withdrawing cash that can serve as an alternative to withdrawal by surrender or as funds to pay the higher premiums.  And when policyholders cancel their policies, they commonly let the unwanted policies lapse by not paying premiums rather than informing Insurers of their intent to cancel.

Here, we face the problem of what to do with a class of Insureds that contains many of these people.  How can they recover for procedural violations of Statutes meant to prevent unintentional lapse when the Insureds intended for their policies to lapse?  For example, "although the Statutes require Insurers to give Insureds an opportunity to designate a designee, if the Insured would never have designated a designee anyway, then the damages cannot be said to result from the Insurer's failure to provide an opportunity to designate." *Steen v. Am. Nat'l Ins. Co.*, No. 2:20-cv-11226-ODW (SKx), 2023 U.S. Dist. LEXIS 105592, at \*37 (C.D. Cal. June 14, 2023).  If "a significant number of policy lapses were likely intentional on the part of the class members" does "[a] class member who intentionally chose to let her policy lapse suffer[] no damages"?  *Nieves v. United of*

*Omaha Life Ins. Co.*, No. 21-cv-01415-H-KSC, 2023 U.S. Dist. LEXIS 53397, at *23–24 (S.D. Cal. Mar. 28, 2023).

District courts faced with this issue have split between two competing theories of recovery—the "violation-only" theory (sometimes called "strict compliance") and what we now term the "causation" theory.[1]  For the reasons stated below, we believe that the California Supreme Court would adopt the "causation" theory.  This means a plaintiff must not only show an Insurer's *violation*, but that the *violation caused* them harm.

## A

To understand our reasoning, we provide some background on the two theories.  The "violation-only" theory stems in part from one provision of the Statutes that states life insurance policies "shall" not lapse due to non-payment unless the Insurer has sent one of the required notices.  Cal. Ins. Code § 10113.72(c).  As the theory goes, an Insurer's noncompliance with the Statutes keeps the policy in perpetual force even after nonpayment of premiums.  District courts that adopt this theory[2] thus find

---

[1] The "causation" theory has also been referred to as the "subjective intent approach."  *See, e.g.*, *Lee v. Great Am. Life Ins. Co.*, No. 5:20-cv-01133-SPG-SHK, 2024 U.S. Dist. LEXIS 149997, at *22 (C.D. Cal. Aug. 20, 2024).

[2] *See, e.g.*, *Grundstrom v. Wilco Life Ins. Co.*, No. 20-cv-03445-MMC, 2023 U.S. Dist. LEXIS 156972, *3 (N.D. Cal. Sep. 5, 2023) ("[T]he Court finds unpersuasive [the Insurer's] argument that [the Insured] has failed to show a triable issue as to causation, namely, that 'any failure of [the Insurer] to provide [the Insured] written notice of the annual right to designate,' 'caused the [p]olicy to lapse.'  Rather, the Court finds persuasive the authority, cited by [the Insured], holding a defendant

that causation and damages are "immaterial for the simple reason that the policy did not lapse." *See Moriarty*, 686 F. Supp. 3d at 1032–33.

Without any authoritative appellate decisions to guide them, district courts have supported the "violation-only" theory with two main sources: (1) the reasoning and law behind California state court opinions endorsing a "violation-only" theory for non-compliance with notice-

---

Insurer's failure to comply with the above-referenced third-party-designee requirement sufficient to support a breach of contract claim, irrespective of the plaintiff's ability to show a causal relationship between the lack of statutorily required notice and the lapse") (alterations in original); *Farley v. Lincoln Ben. Life Co.*, No. 2:20-cv-02485-KJM-DB, 2023 U.S. Dist. LEXIS 68482, at *11–12 (E.D. Cal. Apr. 18, 2023) (*Farley I*) (finding "[q]uestions of causation, i.e., whether the policy would have lapsed even if defendant had complied with the statutes, are not relevant to whether there was a violation of a procedural right"), *reconsideration denied*, No. 2:20-cv-02485-KJM-DB, 2023 U.S. Dist. LEXIS 149067, at *11 (E.D. Cal. Aug. 24, 2023) (*Farley II*) (reiterating "[a]lthough the Ninth Circuit has not formally decided whether any procedural violation of the statutes prevents a policy from lapsing, in a memorandum decision, a Circuit panel has suggested it does"); *Larone v. Metro. Life Ins. Co.*, No. 2:21-cv-00995-AB (AGRX), 2022 U.S. Dist. LEXIS 29749, at *19 (C.D. Cal. Feb. 9, 2022) ("Because [the Insurer] failed to comply with this requirement, the Policy could not lapse. Accordingly, Plaintiff has alleged that [the Insurer] was in breach by refusing to accept the [late payment] and terminating the Policy."); *Poe v. Nw. Mut. Life Ins. Co.*, No. 8:21-cv-02065-SPG-E, 2023 U.S. Dist. LEXIS 145642, at *21 (C.D. Cal. Aug. 14, 2023) (*Poe I*) (agreeing that "while the Statutes do not provide a private right of action, they nonetheless confer strict liability if an Insurer fails to provide the Designation Notices"); *Moriarty v. Am. Gen. Life Ins. Co.*, 686 F. Supp. 3d 1027, 1032 (S.D. Cal. 2023) ("By refusing to pay the benefits of [the Insured's] life insurance policy—another undisputed fact—Defendant breached the contract, entitling Plaintiff to summary judgment on this claim.").

before-lapse statutes for short-term policies like auto and homeowner insurance; and (2) the unpublished memorandum disposition in *Thomas v. State Farm Life Insurance Co.*, No. 20-55231, 2021 U.S. App. LEXIS 30035 (9th Cir. Oct. 6, 2021), that with minimal discussion adopted the "violation-only" theory in affirming summary judgment for a plaintiff alleging breach of contract for violation of the Statutes.

In contrast, the "causation" theory prescribes that the plaintiff must not only allege a violation of the Statutes, but must also show that the violation caused them harm. In other words, a plaintiff must demonstrate that they did not knowingly or intentionally let the policy lapse such that the Insurer's compliance with the Statutes would have caused the plaintiff to pay their premiums and retain the policy. District courts adopting this theory[3] generally cite the

---

[3] *See, e.g.*, *Wollam v. Transamerica Life Ins. Co.*, No. 21-cv-09134-JST, 2024 U.S. Dist. LEXIS 44575, at *13 (N.D. Cal. Mar. 13, 2024) (agreeing that "California law requires plaintiffs to demonstrate causation of damages to establish a claim for breach of contract" for recovering under the Statutes); *Poe I*, 2023 U.S. Dist. LEXIS 145642, at *16–17 (denying motion for class certification because class contained Insureds that intended policies to lapse without suffering injury, and so individual questions predominate over common ones), *reconsideration denied*, No. 8:21-cv-02065-SPGE, 2023 U.S. Dist. LEXIS 188287, at *7 (C.D. Cal. Sept. 27, 2023) (*Poe II*) ("It is because of this legal framework requiring a showing of harm (rather than strict liability), in conjunction with Plaintiff's broad proposed class definition, that led the Court to find that individualized inquiries would predominate whether the class members had actually been harmed by the Defendant's violation of the Statutes."); *Steen*, 2023 U.S. Dist. LEXIS 105592, at *36–37 ("[B]reach of contract claims require a causal link between the breach and the damages.") citing *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011)); *Nieves*, 2023 U.S. Dist. LEXIS 53397, at *23–24

California appellate and Supreme Court decisions in *McHugh I–III*, and argue this theory is the only logical way to recover for a breach of contract action.

We now examine the policy and case law supporting these two competing theories in an effort to explain why we think the California Supreme Court would likely adopt the "causation" theory. Given the lack of a private cause of action in the Statutes, nothing in California law convinces us that a breach of contract claim in this context should operate any differently than it usually would: by requiring a breach that caused the plaintiff's injury.

**1**

Small and the district courts adopting the "violation-only" theory nonetheless rely on California state court opinions interpreting statutory notice requirements for short-term, often mandatory, insurance policies like auto or home. These cases hold that because the auto or home insurance company failed to comply with statutory notice obligations, the Insurer's termination of a policy due to the Insured's nonpayment is ineffective—the policy remains in perpetual force even after nonpayment because the Insurer never sent the required notices after nonpayment occurred. *See, e.g.*, *Mackey v. Bristol W. Ins. Servs. of Cal., Inc.*, 105 Cal. App.

---

("Plaintiff must prove damages resulting from the defendant's breach to establish liability for breach of contract. . . . A class member who intentionally chose to let her policy lapse suffers no damages."); *Pitt v. Metro. Tower Life Ins. Co.*, No. 20-CV-694-RSH-DEB, 2022 U.S. Dist. LEXIS 233896, at *21 (S.D. Cal. Dec. 1, 2022) (explaining that a "violation of one of the several requirements contained in the Statutes does not by itself establish all the elements of a claim for breach of contract" because, for example, "the termination of the policy might be due to the policyholder's request rather than to nonpayment of premiums").

4th 1247, 1254–55, 1259, 1266 (2003) (concluding that Insurer's notice was "invalid and unenforceable" where auto Insurer attempted to cancel policy but failed to provide requisite notice to Insured even though Insured admittedly did not pay the premium on time); *Kotlar v. Hartford Fire Ins. Co.*, 83 Cal. App. 4th 1116, 1121 (2000) (holding "[i]f a cancellation is defective, the policy remains in effect even if the premiums are not paid" for one-year commercial general insurance where non-payment of the premium resulted in premature termination).

Relying on this case law, one of the most recent federal district court cases to interpret the Statutes held that "under longstanding principles of California insurance law, the strict compliance approach governs," citing *Mackey* and *Kotlar* among others. *Lee*, 2024 U.S. Dist. LEXIS 149997, at \*22–25; *see also Siino v. Foresters Life Ins. & Annuity Co.*, No. 20-cv-02904-JST, 2023 U.S. Dist. LEXIS 117071, at \*15, 18–19 (N.D. Cal. July 7, 2023) (*Siino II*) (relying on *Mackey* and *Kotlar* in support of "violation-only" theory for declaratory relief claims without ruling on breach of contract).  The district court below also relied in part on *Mackey* and similar cases for adopting the "violation-only" theory in its orders on summary judgment.

We believe these California short-term insurance cases have distinguishable facts that make the reasoning behind these rulings less persuasive in the life insurance context. Because life insurance policies are voluntary and long-term, deliberate termination by the Insured is common.  And as we explained above, it is an industry norm that Insureds intentionally cancel unwanted policies by not paying premiums.  If policies never lapse and remain perpetually in force even after non-payment simply because the Insurer did not send required notices, policies can accrue for years—

potentially until the Insured is deceased—even if an Insured *intended* to cancel the policy in the first place by declining to pay higher premiums.  We do not think that the Statutes were designed to protect this class of Insureds.[4]

## 2

Next, we examine our unpublished decision in *Thomas v. State Farm Life Insurance Co.*, which district courts have also cited to support the "violation-only" theory.  It affirmed summary judgment for a plaintiff alleging breach of contract for violation of the Statutes based on the "violation-only" theory.  *Thomas*, 2021 U.S. App. LEXIS 30035, at *3.  As an unpublished disposition, *Thomas* is not a binding interpretation of the theory of recovery under the Statutes.  And its truncated reasoning did not fully analyze the issues raised above.

The *Thomas* panel concluded that "[a]n Insurer's failure to comply with these statutory requirements means that the policy cannot lapse."  *Id.*  Thus, because the Insurer "failed to comply with sections 10113.71 and 10113.72, which prevented the policies from lapsing," it "breached its contractual obligations by failing to pay benefits to [the Beneficiary] under the policies after [the Insured's] death."  *Id.* at *3–4.  Many district courts have relied on this language

---

[4] Nonetheless, Small argues that if the California legislature had intended a causation requirement in the Statutes, it would have included one.  In support, Small asks that we take judicial notice of an unenacted amendment to the Statutes, SB 1320, that did not make it to a vote and was withdrawn.  But an "unenacted bill" provides "little clarity," *Lara*, 25 F.4th at 1140, "because we do not know why a specific bill was not passed," *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1075 (9th Cir. 2020).  While we granted Small's motion to take judicial notice of this evidence (ECF No. 70), we afford the evidence little weight.

to support adopting the "violation-only" theory, including the district court below.  *See, e.g.*, *Grundstrom*, 2023 U.S. Dist. LEXIS 156972, at *3; *Farley I*, 2023 U.S. Dist. LEXIS 68482, at *11–12; *Farley II*, 2023 U.S. Dist. LEXIS 149067, at *11; *Larone*, 2022 U.S. Dist. LEXIS 29749, at *19; *Poe I*, 2023 U.S. Dist. LEXIS 145642, at *21; *Moriarity*, 686 F. Supp. 3d at 1032.  Because *Thomas* is non-precedential and did not fully analyze the issues raised above, we respectfully decline to adhere to it here.

### 3

Finally, we turn to the California Court of Appeal and Supreme Court *McHugh* cases interpreting the Statutes at issue, which we think suggest the California Supreme Court would adopt the "causation" theory.  At the very least, nothing in the *McHugh* decisions causes us to conclude that California courts would not apply the usual requirements for a breach of contract claim in cases based on claimed violations of the Statutes.

*McHugh I* was an appeal from the California Superior Court where Beneficiaries sued a life insurance company for breach of contract alleging the Insurer violated the Statutes. *McHugh I*, 40 Cal. App. 5th at 1170.  The Insurer denied the Beneficiaries' claim to pay out a death benefit because the policy had terminated due to nonpayment of premiums before the Policyholder's death.  *Id.*  While the Insurer argued that the Statutes did not apply to the policy because it was issued before the Statutes took effect in 2013, the trial court disagreed and ruled the Statutes *did* apply.  *Id.* Through a special verdict framed around breach of contract elements, the jury found that, although the Insurer "did something the contract prohibited," the plaintiffs were not harmed by the Insurer's failure, and found for the Insurer.

*McHugh II*, 494 P.3d at 28.  The Beneficiaries appealed on various grounds, but the Court of Appeal in *McHugh I* affirmed the judgment on other grounds: the verdict could not be overturned because the Statutes *did not* apply to policies issued after the Statutes became effective.  *McHugh I*, 40 Cal. App. 5th at 1169–71.

Next, the California Supreme Court in *McHugh II* granted review solely to resolve whether the Statutes applied to policies in force when the Statutes became effective in 2013.  *McHugh II*, 494 P.3d at 29.  Reversing the Court of Appeal in *McHugh I*, the California Supreme Court found the Statutes *do* apply to policies in force as of 2013.  *Id.* at 46.  Thus, the statutorily mandated terms are incorporated into the existing contracts.  *See id.* at 27.  Without addressing whether the jury verdict was correct, the court remanded the proceedings consistent with its decision that the Statutes applied to the policy.  *Id.* at 45 n.10, 46.

On remand, the California Court of Appeal reversed and remanded for a new trial based on an inconsistent verdict in an unpublished decision.  *McHugh v. Protective Life Ins.*, 2022 Cal. App. Unpub. LEXIS 6109, at *6 (Oct. 10, 2022) (*McHugh III*).  Without explicitly declaring what is required to recover, the Court of Appeal affirmed the trial court in declining to instruct the jury with "the plaintiffs' special instructions on 'strict compliance,'" reasoning that it was correct to simply instruct based on the language of the Statutes (which do not contain "strict compliance" language).  *Id.* at *23.  The court then rejected the plaintiffs' reliance on California case law like *Mackey* and *Kotlar*, explaining that "this is an action for breach of contract that must be decided on its own particular facts" and that these cases are "factually distinguishable from the present case and therefore have no applicability."  *Id.* at *23–24.  The

court found no error in the trial court's instruction because it "instructed the jury on the plaintiffs' burden of proof to prevail in an action for breach of contract." *Id.* at *24. Notably, "in addition to proving [the Insurer] breached the contract, *plaintiffs had the burden of proving they were harmed by the breach*." *Id.* (emphasis added).

No other California appellate or Supreme Court cases have since weighed in on what is required for recovery for violations of the Statutes.

**B**

Now, we turn to the case before us. Because the California Supreme Court has not declared what is required to recover for violations of the Statutes, we "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990). Considering the case law and reasoning discussed above, we think the California Supreme Court would adopt the "causation" theory and reject the "violation-only" theory.

We think it significant that the California Supreme Court in *McHugh II* had the opportunity to rectify the formulation of the plaintiffs' claim and clarify that only a violation is required to recover, but it did not. We also think it significant that on remand, the California Court of Appeal in *McHugh III* proceeded under a breach of contract analysis. The court notably affirmed the trial court in declining to instruct the jury on strict compliance and rejected plaintiffs' reliance on *Mackey* and *Kotlar*. *McHugh III*, 2022 Cal. App. Unpub. LEXIS 6109, at *24. Then, it clearly stated that "[i]n addition to proving [the Insurer] breached the contract, plaintiffs had the burden of proving they were harmed by the

breach." *Id.* This statement supports the "causation" theory because "[i]mplicit in the element of damages is that the defendant's breach *caused* the plaintiff's damage." *Troyk*, 171 Cal. App. 4th at 1352 (emphasis added). And "[c]ausation of damages in contract cases" requires the "causal occurrence" between damages and the defendant's breach "be at least reasonably certain." *Vu v. Cal. Com. Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997).

In sum, considering that (1) the Statutes contain no private cause of action and thus require a breach of contract theory for which causation is a key element; (2) *McHugh I– III* suggest that California favors the "causation" theory; (3) there are no California Supreme Court or Court of Appeal cases adopting the "violation-only" theory for the Statutes; (4) several federal district courts have adopted the "causation" theory for the same reasons we do; (5) district courts that have adopted the "violation-only" theory predominantly rely on non-precedential *Thomas*; and (6) public policy favors the "causation" theory and weighs against the "violation-only" theory given the realities of the life insurance industry, we think that the California Supreme Court would similarly adopt a "causation" theory to recover for violations of the Statutes.

## C

With "the elements of the underlying cause of action" in hand—now including causation—we can determine whether the district court erred in certifying Small's Subclasses. *See Erica P. John Fund, Inc.*, 563 U.S. at 809. "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks and citation omitted). To certify a

class, plaintiffs bear the burden of satisfying each of the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—and at least one requirement of Rule 23(b). *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 663.

Rule 23 is more than "a mere pleading standard; plaintiffs cannot plead their way to class certification through just allegations and assertions." *Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249, 1258 (9th Cir. 2024) (citing *Wal-Mart*, 564 U.S. at 350, 359). Instead, plaintiffs "must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23" by a preponderance of the evidence. *Id.* (citations omitted). Certification is then only appropriate if the district court is "satisfied, after a rigorous analysis" that Rule 23 is met. *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 664 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); *see also Black Lives Matter L.A.*, 113 F.4th at 1258 ("Class certification is thus not to be granted lightly."). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. "[A] district court must consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Wal-Mart*, 564 U.S. at 351).

Here, Allianz challenges the district court's certification of Small's class, arguing that it lacks the commonality, typicality, and adequacy requirements of Rule 23(a),[5] and that the class does not meet the requirements of Rule

---

[5] Allianz does not dispute numerosity, which requires the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

23(b)(2) or 23(b)(3). We hold that Small is an inadequate representative and her claim is atypical of both Subclasses. Further, we hold the class cannot survive because, under the "causation" theory, neither Subclass satisfies Rule 23(b).

**1**

We first assess whether the requirements of commonality and predominance are met. *JustFilm, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (addressing those two requirements in tandem). Commonality mandates there be a common question of law or fact among the class members "where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Lara*, 25 F.4th at 1138 (alteration in original) (internal quotation marks and citation omitted). To satisfy commonality, "[e]ven a single [common] question" is enough. *Wal-Mart*, 564 U.S. at 359 (internal quotation marks and citation omitted).

Besides commonality, a class seeking damages—here, the Beneficiary Subclass—must satisfy Rule 23(b)(3), which requires the common question(s) "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). While common questions must be capable of class-wide adjudication, "[a]n individual question is one where 'members of a proposed class will need to present evidence that varies from member to member.'" *Lara*, 25 F.4th at 1138 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). In short, "Rule 23(a)(2) asks whether there are issues common to the class, and Rule 23(b)(3) asks whether these common questions predominate." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). "Showing predominance is difficult, and it regularly presents the greatest obstacle to class certification." *Black*

*Lives Matter L.A.*, 113 F.4th at 1258 (internal quotation marks and citation omitted).

**a**

Examining commonality, the district court certified the class based on the common question of "[w]hether all class members were harmed by Allianz's alleged failure to comply with the Statutes." It later characterized as common the question of "whether Allianz had a corporate policy to terminate life insurance policies for non-payment of premiums without first complying with the Statutes." But the first question cannot be adjudicated on a class-wide basis. For the reasons discussed below, establishing that Allianz's alleged conduct caused each class member an injury requires "present[ing] evidence that varies from member to member." *Tyson Foods, Inc.*, 577 U.S. at 453. The district court's first question is not an appropriate question to satisfy commonality.

But the second question—whether Allianz had a corporate policy to terminate life insurance policies for non-payment of premiums without first complying with the Statutes—does satisfy commonality. We have held that whether an insurance company violated a statute giving rise to the action can be a common question to the class. *See Lara*, 25 F.4th at 1138 ("Whether [the Insurer's] condition adjustment violates the Washington state regulations is a common question."). Further, our district courts interpreting the Statutes in class actions "have repeatedly found that putative class claims concerning Insurers' compliance with the Statutes' notice provisions meet Rule 23(a)(2)'s commonality requirement." *Lee*, 2024 U.S. Dist. LEXIS 149997, at *8–10. And numerous district courts have so interpreted these Statutes. *See, e.g.*, *id.*; *Poe I*, 2023 U.S.

Dist. LEXIS 145642, at *11; *Wollam*, 2024 U.S. Dist. LEXIS 44575, at *9; *Farley I*, 2023 U.S. Dist. LEXIS 68482, at *10; *Nieves*, 2023 U.S. Dist. LEXIS 53397, at *11; *Siino I*, 340 F.R.D. at 163; *Bentley v. United of Omaha Life Ins. Co.*, No. CV 15-7870-DMG (AJWx), 2018 U.S. Dist. LEXIS 117107, at *22, 26 (C.D. Cal., May 1, 2018).

Allianz nonetheless argues that this is not a common question because Plaintiffs allege different provisions of the Statutes have been violated. But where the circumstances of class members "vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parsons*, 754 F.3d at 675 (citation omitted). This is a common question here because it is capable of class-wide adjudication, and was, in fact, adjudicated at summary judgment. *See Wal-Mart*, 564 U.S. at 350 ("What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.") internal quotation marks and citations omitted)).

Commonality is thus satisfied because case law shows that whether a violation of the Statutes occurred is an appropriate common question, and the record here shows that this question can be adjudicated on a class-wide basis.

**b**

We now turn to predominance because the Beneficiary Subclass seeking damages must show that the common question predominates over individualized questions as required by Rule 23(b)(3). Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc.*, 577 U.S. at 453. Because "[c]onsidering whether questions of law or

fact common to class members predominate begins, of course, with the elements of the underlying causes of action," *Erica P. John Fund, Inc.*, 563 U.S. at 809 (internal quotation marks and citation omitted), the theory of recovery for violations of the statutes dictates whether the class can be certified.

Since we reject the district court's "violation-only" theory and adopt the "causation" theory, we must reconsider the predominance requirement in light of the latter. We hold that, because Plaintiffs must not only establish a violation but that the violation caused them harm, common questions do not predominate because causation cannot be determined on a class-wide basis.

The record here is clear that determining whether policyholders knowingly let their policies lapse due to nonpayment is an individualized inquiry. Allianz's expert witness conducted a random sampling of 100 class member policies, finding at least 43 had evidence that the policyholder knew the policy would lapse due to nonpayment. The expert stated that Allianz's electronic policy administration system does not distinguish voluntary from involuntary lapses or other specific circumstances surrounding termination. Thus, as Allianz's expert explained, determining the reason for a lapse generally requires an individual review of a policy file that can take hours. The expert explained that it took approximately 3.5 hours to review an individual policy file to determine whether there was evidence that the policyholder knowingly let their policy lapse due to nonpayment.

It is clear to us that determining whether a policyholder intentionally lapsed their policy is an individual inquiry that cannot be determined at a class-wide level. Numerous

district courts following the "causation" theory agree. *Holland-Hewitt v. Allstate Life Ins. Co.*, No. 1:20-cv-00652-KES-SAB, 2024 U.S. Dist. LEXIS 55178, at \*37, 45–46; *Wollam*, 2024 U.S. Dist. LEXIS 44575, at \*13; *Poe I*, 2023 U.S. Dist. LEXIS 145642, at \*24; *Nieves*, 2023 U.S. Dist. LEXIS 53397, at \*22–24; *Steen*, 2023 U.S. Dist. LEXIS 105592, at \*43.  We thus hold that individual questions of causation and injury predominate over the common question of whether Allianz violated the Statutes.

Finally, Rule 23(b)(3) also requires the class action be "superior" to an individual action by weighing "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)–(D).

These factors weigh against Small's class action being superior for the same reasons that individual questions predominate over common ones.  Further, as Allianz argues, class members are not barred from bringing individual causes of action—just as Small did—as long as they show not only a violation, but that the violation caused them harm. While individual actions may not be feasible for every class member, that does not weigh against the fundamental problems discussed above with certifying the class.  Thus, a class action is not the "superior" means to adjudicate these claims.

For these reasons, the "causation" theory leads to the conclusion that individual questions predominate over common ones.  The predominance requirement therefore is

not satisfied, and the Beneficiary Subclass cannot be certified.

**2**

The district court erred when it certified the Living Insured Subclass by holding that it was entitled to class-wide equitable relief as provided in Rule 23(b)(2). The provision applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688; *see also Wal-Mart*, 564 U.S. at 362–63.

Here, the district court found the Living Insured Subclass seeking to have their policies reinstated satisfied Rule 23(b)(2) based on a two-sentence explanation. But this was far from the "rigorous analysis" that certification requires. *See Wal-Mart*, 564 U.S. at 351 (citations omitted). Once again, the problem is that Allianz presented evidence that many members of the class knowingly let their policies lapse as a means of termination. This prevents the Living Insured Subclass from satisfying Rule 23(b)(2) for two reasons.

First, the injunctive relief of reinstating policies is not "appropriate" under Rule 23(b)(2). Because members of a class certified under Rule 23(b)(2) cannot opt-out, *id.* at 362, forced reinstatement of policies means reinstating policies for Insureds who intentionally cancelled and who cannot show that the inadvertent policy lapse caused harm. Further, reinstatement would mean that all members of the Subclass must pay back lost premiums for the policies to be reinstated,

and perhaps at much higher rates.  *See, e.g.*, *Holland-Hewitt*, 2024 U.S. Dist. LEXIS 55178 at \*42 (stating its living insured subclass "would be required to bring premiums current to reinstate their policies which could require these class members to pay thousands of dollars in back premiums"); *Siino II*, 2023 U.S. Dist. LEXIS 117071, at \*22 (granting in part plaintiff's individual claim for declaratory relief and holding plaintiff "must tender back premiums to [the Insurer] within a reasonable time to reinstate her policy").  We agree with the observation that this is because "[a]ny other interpretation would be inconsistent with *McHugh* [*II*]'s finding that the Statutes were retroactive because they did not substantially impair the insurance company's rights under the existing policy.  Requiring an insurance company to waive premiums, potentially for almost a decade, would clearly impair the company's rights under the policy." *Holland-Hewitt*, 2024 U.S. Dist. LEXIS 55178, at \*42 n.11 (citation omitted).

Second, at summary judgment, the district court here ordered that Small and the Living Insured Subclass "are entitled to a declaration that their life insurance policies were improperly lapsed by Allianz because it failed to strictly comply with the Statutes before it lapsed those policies." But declaratory relief for this Subclass is only appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).

The district court's declaration does not meet this standard.  The declaration improperly adjudicates the breach of contract claim before Plaintiffs established causation and

damages by declaring that the policies "improperly lapsed" *because* Allianz failed to comply with the Statutes. But without evidence of causation, we agree that "declaratory relief will serve no useful purpose" in resolving Plaintiffs' breach of contract claim. *See Holland-Hewitt*, 2024 U.S. Dist. LEXIS 55178, at *15.

For these reasons, neither an injunction forcing specific performance, nor the district court's declaration constitute "indivisible" relief that "benefits all its members at once." *See Wal-Mart*, 564 U.S. at 362. The Living Insured Subclass does not meet the standard for class-wide equitable relief under Rule 23(b)(2) and that Subclass cannot be certified.

**3**

Having determined neither Subclass meets the requirements of Rule 23(b), we also find the district court erred in certifying the class based on adequacy and typicality under Rule 23(a). While commonality and the requirements under Rule 23(b) relate to the action itself, adequacy and typicality relate to the class representative—here, LaWanda Small. We hold that Small is not an adequate representative with typical questions to represent both Subclasses.

Rule 23(a)(3) requires the class representative's claims or defenses be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Just Film, Inc.*, 847 F.3d at 1116 (internal quotation marks and citation omitted). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members

have been injured by the same course of conduct." *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (internal quotation marks and citation omitted).

Rule 23(a) also mandates the representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (internal quotation marks and citation omitted). If either answer is no, the representative is inadequate. *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010).

On appeal, Allianz makes several arguments that Small is not an adequate representative and her questions are atypical.[6] Allianz first argues Small is not adequate to represent the Living Insured Subclass because she is only a member of the Beneficiary Subclass and is therefore only eligible for damages and not equitable relief.[7]

---

[6] The parties dispute whether Allianz waived adequacy. We will consider adequacy because it goes to the legal question of whether the district court abused its discretion in finding Rules 23's adequacy requirement satisfied. *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010) ("[T]his court has oft repeated that an error of law [in certifying a class] is an abuse of discretion."). Regardless, we do not think the issue was waived.

[7] Small disputes that she is a member of only the Beneficiary Subclass, arguing that she was insured on her family policy as an "other Insured" and was therefore a co–owner with her now deceased husband. But the policy application lists Small's husband as the sole owner and provides

We agree that this argument defeats adequacy as to the Living Insured Subclass. Numerous district courts interpreting these Statutes and considering this same argument have found a representative of only one Subclass (whether Living Insured or Beneficiary) cannot adequately represent the Subclass to which they do not belong. *See, e.g.*, *Lee*, 2024 U.S. Dist. LEXIS 149997, at *35 (holding representatives of living insured subclass "are not the correct parties to represent the proposed damages class" and that "if [p]laintiffs wish to continue to seek certification of a damages class" they must "move to add a new class representative who can adequately represent" that class); *Pitt*, 2022 U.S. Dist. LEXIS 233896, at *13 (plaintiff was not typical because she was a beneficiary seeking damages and 97% of the class were living insureds seeking reinstatement of their policies); *Holland-Hewitt*, 2024 U.S. Dist. LEXIS 55178, at *41 (finding no adequacy because "[p]laintiff is seeking damages in this action, and ninety-eight percent of the putative class will be seeking declaratory and injunctive relief to which [p]laintiff is not entitled"). We agree that Small cannot adequately represent a Subclass to which she does not belong. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 625–26 (1997). Nor does she "possess the same interest" or "suffer the same injury" as the Living Insured Subclass. *Id.*

Allianz argues Small lacks typicality because her questions are atypical of members whose policies were

---

that the "owner is solely entitled to exercise all policy rights." The fact that Plaintiff's life was insured with term coverage under the policy does not confer ownership rights on her. Further, once her husband died, that policy terminated. Thus, she is no longer an Insured on her own policy, and, as the district court recognized, she is not a member of the Living Insured Subclass.

intentionally terminated because Small alleges hers lapsed inadvertently.  We agree that adopting the "causation" theory leads to the conclusion that Small, who alleges her policy lapsed inadvertently, does not have typical questions of members whose policies lapsed intentionally because they do not "have the same or similar injury," the action is "based on conduct which is [] unique to the named plaintiff[]," and "other class members have [not] been injured by the same course of conduct." *See Torres*, 835 F.3d at 1141 (internal quotation marks and citation omitted).  Numerous district courts adopting the "causation" theory also agree. *See, e.g.*, *Poe I*, 2023 U.S. Dist. LEXIS 145642, at *17; *Wollam*, 2024 U.S. Dist. LEXIS 44575, at *16–17; *Pitt*, 2022 U.S. Dist. LEXIS 233896, at *11; *Steen*, 2023 U.S. Dist. LEXIS 105592, at *14; *Nieves*, 2023 U.S. Dist. LEXIS 53397, at *13.

For these reasons, we find that Small is not an adequate representative with typical questions to represent both Subclasses.

**V**

We conclude the district court erred in granting class certification because Small has not shown that either Subclass meets the requirements of Rule 23(a) and (b). Because we vacate the summary judgment orders, whether the district court violated the one-way intervention prohibition is moot.  The district court's order certifying the class is REVERSED.  The orders on summary judgment are VACATED and the matter is REMANDED for further proceedings.