**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEEANA LARA, on behalf of themselves and all others similarly situated; CAMERON LUNDQUIST, *Plaintiffs-Appellants*, <br><br> v. <br><br> FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation; LM GENERAL INSURANCE COMPANY; CCC INTELLIGENT SOLUTIONS INC., *Defendants-Appellees.* | No. 21-35126 <br><br> D.C. No. 3:18-cv-05301-RJB <br><br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, District Judge, Presiding

Argued and Submitted January 10, 2022
San Francisco, California

Filed February 11, 2022

Before: Ronald M. Gould, Mark J. Bennett, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson

**SUMMARY**[*]

**Class Action**

The panel affirmed the district court's decision declining to certify a proposed damages class in an auto insurance diversity action.

Plaintiffs sued Liberty Mutual, an auto insurer, and CCC Intelligent Solutions, a company that Liberty works with to help it develop its valuations. Liberty's valuation method uses a report about the value of "comparable vehicles," provided by CCC. To account for the difference between the average car owned by a private person and the cars for sale at dealerships, CCC reduces a totaled car's valuation. Plaintiffs' vehicles were totaled, and Liberty valued them in part with the disputed downward condition adjustment.

Plaintiffs alleged that Liberty breached its contracts with its insureds and that both companies violated Washington's unfair trade practices law and committed civil conspiracy. The district court declined to certify the proposed class because individual questions predominated over common questions and individualized trials were superior to a class action.

The panel held that the district court did not abuse its discretion in finding that the predominance and superiority requirements for certifying a class action were not satisfied. First, the district court did not abuse its discretion in finding that common questions did not predominate. Whether

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Liberty and CCC's condition adjustment violates the Washington state regulations is a common question. But to show liability for breach of contract or unfair trade practices, plaintiffs must show an injury. To show an injury will require an individualized determination for each plaintiff. Hence, the district court did not abuse its discretion in finding that those individualized determinations predominate over the common questions. Second, the district court's finding of no superiority was not an abuse of discretion for the same reason. A class action here would involve adjudicating issues specific to each class member's claim, and that would be unmanageable. Individual trials would be a better way to adjudicate those issues.

## COUNSEL

John M. DeStefano (argued) and Robert B. Carey, Hagens Berman Sobol Shapiro LLP, Phoenix, Arizona; Steve Berman, Hagens Berman Sobol Shapiro LLP, Seattle, Washington; for Plaintiffs-Appellants.

Theodore J. Boutrous Jr. (argued), Bradley J. Hamburger, Daniel R. Adler, and Matt Aidan Getz, Gibson Dunn & Crutcher LLP, Los Angeles, California; James A. Morsch and Casey T. Grabenstein, Saul Ewing Arnstein & Lehr LLP, Chicago, Illinois; for Defendants-Appellees First National Insurance Company of America, and LM General Insurance Company.

Gregory G. Garre (argued), Marguerite M. Sullivan, Jason R. Burt, and Cherish A. Drain, Latham & Watkins LLP, Washington, D.C.; Samir Deger-Sen, Latham & Watkins LLP, New York, New York; for Defendant-Appellee CCC Intelligent Solutions Inc.

Daniel L. Syhre, Betts Patterson & Mines P.S., Seattle, Washington, for Amici Curiae American Property Casualty Insurance Association, and National Association of Mutual Insurance Companies.

**OPINION**

R. NELSON, Circuit Judge:

In this auto insurance suit, the district court declined to certify a proposed damages class because it held both that individual questions predominated over common questions and that individualized trials were superior to a class action. Because neither holding was an abuse of discretion, we affirm.

I

This case is about how auto insurance companies value totaled vehicles. Plaintiffs Leeana Lara and Cameron Lundquist sued both Liberty Mutual,[1] an auto insurer, and CCC Intelligent Solutions, a company that Liberty works with to help it develop its valuations. Plaintiffs allege that Liberty breached its contracts with its insureds and that both companies violated Washington's unfair trade practices law

---

[1] Defendants First National Insurance Company of America and LM General Insurance Company are part of the "Liberty Mutual umbrella" of insurance companies. The parties call those two "Liberty," so we do, too.

and committed civil conspiracy.[2]  Plaintiffs' claims and this appeal depend on the details of Liberty's valuation process.

A

A car is "totaled" when it makes more sense to salvage the car than to fix it.  When that happens, the insurance company has to figure out how much the car was worth before the accident, so it knows how much to pay the insured.  In Washington, the insurer only has to pay the "actual cash value" of the car—the "fair market value." Wash. Admin. Code § 284-30-320(1).  Paying the actual cash value requires the insurer to figure out how much the car would have been sold for before the accident.  Looking at the car after the accident doesn't always indicate its worth before, so Liberty values the totaled car with a multi-step process involving a separate company (CCC, the other defendant).

Liberty's method uses a report about the value of "comparable vehicles," provided by CCC.  To start, a Liberty adjuster inspects the car and then tells CCC about it. CCC then prepares a valuation report.  It makes that report using a database of cars at dealerships all around the country. Essentially CCC's business is that it tracks car sales: it goes to dealerships all over, inspects cars, and tracks their sales. Then, when an insurer like Liberty contacts it about a car, it prepares a valuation report.  It starts with the value of comparable cars—other cars that are a similar make and model, are in similar condition, and have similar features.  It then adjusts from that price to better estimate the value of the

---

[2] The civil conspiracy claim derives from the deceptive trade practices claim.  *See W. G. Platts, Inc. v. Platts*, 438 P.2d 867 (Wash. 1968).

totaled car.  For example, if the totaled car had fancy after-market features, then CCC would adjust the price up.

One adjustment in particular is at the core of this case. Used cars for sale at dealerships are usually in pretty good condition: the dealerships don't sell them otherwise, and CCC doesn't use dealerships that sell bad cars.  To account for the difference between the average car owned by a private person and the cars for sale at dealerships, CCC thus reduces the totaled car's valuation.  But CCC also looks at the actual pre-accident condition of the totaled car.  If it was in great condition, then CCC reverses the negative adjustment and sometimes even applies a positive adjustment.  As we discuss below, Plaintiffs' theory of the case is that Liberty violates Washington's insurance regulations by not itemizing or explaining this downward "condition adjustment," which makes it impossible to verify. Wash. Admin. Code § 284-30-320(3).

Once CCC finishes its report, it sends it to Liberty.  A Liberty adjuster then reads it and makes an offer to the insured.  The offer is usually but not always based on the CCC report.  (The adjuster can also use other sources or make a higher offer based on "goodwill" or as an attempt to end negotiations.)  If the insured accepts the offer, then that's the end of it.  But if the parties can't agree, then either one can request an appraisal, a process which is provided for in the insurance contract.  Each party would then hire an appraiser who appraises the car.  If they agree, then their valuation is binding.  If they disagree, then they select together a neutral umpire, and the valuation that any two of the three agree to, is binding.

B

Lara and Lundquist's vehicles were totaled, and Liberty valued them in part with the disputed downward condition adjustment.[3]  Lara and Lundquist then sued Liberty and CCC, arguing that they didn't follow Washington state insurance regulations.  More specifically, the regulations require the insurers to itemize the deductions or additions that they make, and that these adjustments be appropriate. Wash. Admin. Code § 284-30-320(3).   Because these regulations are enforced by the Washington insurance commissioner, Wash. Rev. Code § 48.30.010(5)–(6), and do not create a private cause of action, Plaintiffs couldn't sue Liberty and CCC directly for violating them, so instead, they sued Liberty for breach of contract and both companies for unfair trade practices, *see* Wash. Rev. Code § 19.86.090, and civil conspiracy.

Liberty moved to dismiss the case, but the district court declined, holding that the relevant regulation did apply to the adjustments and that Plaintiffs had plausibly alleged their claims.  Plaintiffs then asked the district court to certify a class of all people whose valuations included the disputed adjustment.

To certify any class requires numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a).  And to certify a damages class, like this one, plaintiffs must also show that common questions predominate over individual ones and that a class action is the superior method of

---

[3] Because we decline to reach whether Lara and Lundquist's claims are typical under Federal Rule of Civil Procedure 23(a)(3), we do not recount the facts of their individual valuations.

resolving the dispute.  Fed. R. Civ. P. 23(b)(3); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013).

The district court declined to certify the class, agreeing with Plaintiffs that the named plaintiffs were typical but agreeing with Defendants that there was no predominance or superiority.  A motions panel of this Court granted permission to appeal.  *See* Fed. R. Civ. P. 23(f).

## II

We review the district court's denial of class certification for abuse of discretion.  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015).  But the district court never has discretion to get the law wrong. *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001).  If the district court gets the law right and "mulls the correct mix of factors," then we can only reverse if it "makes a clear error of judgment in assaying them."  *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1132 (9th Cir. 2016) (cleaned up).

## III

## A

Federal Rule of Civil Procedure 23(b)(3) only allows damages class actions if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."  "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)) (internal quotation marks omitted).  "An individual question is one where 'members of

a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id*. (alteration in original) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50 at 196–97 (5th ed. 2012)). The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id*. (quoting Rubenstein, *supra*, § 4:49 at 195–96). If the central issues in the case are common and predominate, then a damages class action can be permissible even if some other issues like damages will have to be tried individually. *Id*. (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 at 123–24 (3d ed. 2005)).

Federal Rule of Civil Procedure 23(b)(3) also only allows damages classes if the district court finds "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Whether a class action will be manageable "is, by . . . far, the most critical concern in determining whether a class action is a superior means of adjudication." 2 W. Rubenstein, Newberg on Class Actions § 4.72 (5th ed. Supp. 2021).

B

The district court did not abuse its discretion in finding that the predominance and superiority requirements were not satisfied.

1

First, the district court did not abuse its discretion in finding that common questions do not predominate.

Whether Liberty and CCC's condition adjustment violates the Washington state regulations is a common question. But to show liability for breach of contract or unfair trade practices, Plaintiffs must also show an injury. And to show an injury will require an individualized determination for each plaintiff. The district court did not abuse its discretion in finding that those individualized determinations predominate over the common questions.

To win on the merits of breach of contract, plaintiffs must show that "the breach proximately causes damage to the [plaintiff]." *C 1031 Props., Inc. v. First Am. Title Ins. Co.*, 301 P.3d 500, 503 (Wash. Ct. App. 2013). The unfair trade practices claim is similar: it requires proof that a plaintiff as "injured in his . . . business or property." Wash. Rev. Code § 19.86.090. Because Liberty only owed each putative class member the actual cash value of his or her car, if a putative class member was given that amount or more, then he or she cannot win on the merits. But figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person. More particularly, it would involve looking into the actual pre-accident value of the car and then comparing that with what each person was offered, to see if the offer was less than the actual value. Because this would be an involved inquiry for each person, common questions do not predominate.

Some examples of potential class members help show why the district court did not abuse its discretion. First, this class could include a plaintiff whose car was valued using the CCC report with the disputed condition adjustment, and for whom Liberty used CCC's estimate without making any further adjustments. Even for that plaintiff, the district court would have to look into the actual value of the car, to see if there was an injury. Second, the class could also include a

plaintiff for whom Liberty used the CCC report with the disputed condition adjustment but ultimately gave a higher offer, either because of an upward adjustment or just as part of negotiations. This plaintiff's case would demand even more of an individualized inquiry. Finally, this class could also include a plaintiff who at first received the CCC report but whose car was valued with an appraisal. This plaintiff's case would also demand an individualized inquiry.

Plaintiffs have several responses to this reasoning. First, they say that this forces them to "prove two breaches"—the violation of the regulation and then a second breach of actual underpayment. It's true that the district court's order seems to say that Plaintiffs must show both a failure to itemize and an inappropriate amount just to show a violation of the regulation. But whether the district court properly interpreted the regulation makes no difference here. Even if the district court was mistaken, and a regulatory violation requires only proof of failure to itemize *or* a deduction in an inappropriate amount, still, only the Washington insurance commissioner can prosecute violations of the regulation. Wash. Rev. Code § 48.30.010(5)–(6). A violation of the regulation isn't a breach.[4] Breach of contract requires not just a violation of the terms of the contract but also an injury. *C 1031 Props.*, 301 P.3d at 503. Plaintiffs' unfair trade practices claim also requires an injury. Wash. Rev. Code § 19.86.090. It's proof of these injuries that will be individualized.

---

[4] Plaintiffs argue that the regulations are incorporated into the contract and thus a violation of the regulation is a violation of the contract. Defendants contest that Plaintiffs' claims set out violations of the regulations. But at this stage, this dispute doesn't matter: even if a violation of the regulations is a breach of the contract, Plaintiffs still have to show harm.

Second, Plaintiffs respond that these individualized issues of harm are "damages issues" that can be tried separately. But that's not right either: if there's no injury, then the breach of contract and unfair trade practices claims must fail. That's not a damages issue; that's a merits issue.

On this point, Plaintiffs respond that the only possible definition of "actual cash value" in the regulations is the value given by the prescribed process, and thus that the injury for each plaintiff is the amount of the condition adjustment. But that's still not right. If the condition adjustment was applied for a plaintiff but then that plaintiff still got an amount equal to what he or she would have gotten if the adjustment was not applied (or more than that), then there was no breach of contract because there was no injury. And this could easily have happened: CCC or Liberty could have adjusted the value back up, Liberty could have made a higher offer, or the parties could have done appraisals. Liberty is correct to say that on this point, Plaintiffs essentially ask for a strict liability remedy which is not provided by their causes of action.

Third, Plaintiffs say that even if proof of individual injuries is required, the amount of the deduction would still be "relevant . . . evidence" in that inquiry. That's true, but it's also beside the point. Some relevant evidence could be in common, but much of it wouldn't be, and that's why the district court didn't abuse its discretion in finding that individual questions predominate.

Fourth, Plaintiffs point to *Achziger v. IDS Prop. Cas. Ins. Co.*, 772 F. App'x 416 (9th Cir. 2019), to argue that we reversed a district court for not finding predominance in similar circumstances. But on top of being unpublished, *Achziger* does not apply because it did not involve any sort of individualized determinations. While the condition

adjustment here is applied across the board, other compensating adjustments and the ultimate valuation are made individually. And it's those other things that would require more individualized inquiries here.

Plaintiffs finally resort to calling Defendants' adjustments "illegal." But that's an argument for the Washington insurance commissioner, the official who could prosecute this kind of alleged violation. Lara brought this argument to the commissioner, and that office has chosen not to pursue the case. Because the regulations do not provide a private cause of action, Plaintiffs instead sued Liberty and CCC for breach of contract and unfair trade practices. Those causes of action require proof of an injury, and so the district court was correct to apply "the old basketball phrase, 'no harm, no foul.'" If there was no injury, then there was no breach of contract or unfair trade practice. And because figuring out whether each plaintiff was injured would be an individualized process, the district court did not abuse its discretion in finding that individual questions predominated.

2

Second, the district court's finding of no superiority was not an abuse of discretion for the same reason. A class action here would involve adjudicating issues specific to each class member's claim, and that would be unmanageable. Individual trials would be a better way to adjudicate those issues. The district court's finding of no superiority was thus not an abuse of discretion.

IV

The district court did not abuse its discretion in concluding that individual questions predominate over common ones, or that individual trials would be superior to

a class action.  We need not reach Defendants' remaining arguments.  The district court's order is **AFFIRMED.**